## Stuber's Road.

The Act of the 21st April, 1846, authorizing the Courts of Quarter Sessions to vacate roads, ": existing by prescription or lapse of time," is a constitutional and valid exercise of legislative authority.

Rights vested by adverse user and limitation derive their force from positive enactments, from the usages of government, or from the customs of the people, all of which are forms of law-making, and legislation may provide for divesting rights so acquired.

Rights vested by contract are expressly guarded and protected by the constitution.

If the legislature may compel one man to allow another a private road over his land, where such road is necessary, it is but a corollary to this, that they may provide for the vacation of such a road when it shall have become useless.

Such rights grow up out of necessity, and ought to be regarded as morally dependent upon the continuance of the necessity. Per LOWRIE, J.

THIS was an appeal from the decree of the Court of Quarter Sessions of *Northampton county*, by John Stuber. In 1848 the appellant was the owner of a private right of way, acquired by user for more than twenty-one years, leading from his barn in Bethlehem township over lands of Clementina and Robert F. Innes, which was unenclosed woodland. In 1848, by the direction of the guardian of Clementina and Robert F. Innes, who were minors, a tenant of the name of Reimer enclosed this land, and thus obstructed this road claimed by Stuber. Stuber brought an action on the case against Reimer for obstructing this road, and a verdict and judgment were rendered in his favour, which judgment was affirmed in the Supreme Court: see Reimer *v.* Stuber, 8 *Harris* 458. Notwithstanding the verdict and judgment, the obstructions remained and the road continued closed.

In November, 1853, the guardian of the Innes heirs presented a petition to the Court of Quarter Sessions of Northampton county, setting forth the finding of the court and jury establishing the right of way, and alleging it to be useless, inconvenient, and burdensome, prayed the court to appoint viewers to vacate the same. The viewers were appointed, and on the 16th January, 1854, their report vacating the road was filed. Exceptions were filed to the report, but they were overruled and the report confirmed.

The petition was presented, and the proceedings had under the Act of 21st April, 1846, § 1, which is as follows:—

"The powers of the Courts of Quarter Sessions of this Commonwealth, to vacate public and private roads, are hereby extended to all roads, whether laid out by authority of law or existing by prescription or lapse of time, and generally to all roads except private roads resting upon express grant, the evidence of which is still in existence, excepting in such counties as the power to lay out and vacate public roads is or may be vested in some other

[Stuber's Road.]

tribunal than in the Court of Quarter Sessions of the peace; excepting also roads laid out by Act of Assembly, and which are expressly exempted from the jurisdiction of said courts."

The appellant contended, *inter alia*, that this Act of Assembly, so far as it made provision for vacating a private right of way acquired as this was, by *user* or prescription, was unconstitutional and void.

*H. Green* and *A. E. Brown*, for appellant.

*M. Goepp*, for appellees.

The opinion of the court was delivered by

LOWRIE, J.—It was by an adverse user of over twenty-one years that this right of way was acquired. Can the legislature make a law by which all rights of way thus acquired may be divested?

No doubt such a law would be strictly legislative in its character, because it would prescribe a rule of action for the courts in relation to a class of cases supposed to stand in need of a remedy. Such an act has been passed, and it is supposed that it exceeds the constitutional authority of the legislature because it sets aside vested rights. How vested? Not by contract: rights vested in that form are expressly protected. But by adverse user: and whence does this derive its force? From positive enactments, or from the usages of the government, or from the customs of the people; all which are forms of law-making. Legislation, therefore, in some one of its forms, gave the title relied on here, by declaring that government will not inquire into the true title, if there has been an adverse user of twenty-one years. The title, therefore, is founded simply on a limitation of the adverse remedies.

In other words, legislation, in a perfectly competent form, that is by the limitation of actions, has partially taken one man's land and given it to another: may legislation provide in another form for divesting the right? It is hard to see how this question can be answered in the negative, unless possibly by the coming in of a new owner of the way, who might have a true moral ground of title, arising from a purchase on the faith of appearances.

Long continuance has no moral force in converting wrong into right, and therefore a title by lapse of time is not founded upon any meritorious quality in the title itself. But it is a moral duty of government to declare a limit beyond which it will not run the risk of doing wrong, by investigating old transactions in favour of those who have been guilty of negligence in asserting their rights. This, however, does not directly confer title upon a wrong-doer, but only indirectly, by its limitation of the adverse remedy. He has no moral claim upon the permanence of such legislation, however it may be with those to whom he may sell, and he can

[Stuber's Road.]

appeal to no constitutional provision intended to fortify his claim, except those assuring him that his rights shall be protected by "the law of the land," and his remedies administered "by due course of law." These assurances save him from being singled out from his fellow-citizens as a special subject of legislation; but they furnish no guaranty that the law of the land and the due course of law shall remain unalterable. This law was very plainly passed to promote the common good, and not to subserve the interests of particular persons, and we are not entitled to regard or treat it with distrust. On the contrary, it contains a reason that is entitled to favour; for most of these rights of way by user grew out of neighbourly indulgence and generosity, which allowed of travel over private woodlands until they should be wanted for cultivation; and it was unjust and ungenerous to insist upon the continuance of a convenience thus conceded. This law is no more retroactive on vested rights than road laws usually are.

Legislation gives this right in one form and takes it away in another, when it becomes useless; and we see no objection to such legislation. In principle it is only declaring that the law will not furnish remedies for perpetuating servitudes thus originating by its indulgence, if it be ascertained that they have become useless. And surely this fact may be ascertained in the case of a road by the same form of process that is used generally for establishing and vacating roads.

We might also place our decision on another ground. It is not disputed now, that, under our constitution, the legislature may, by a general law, provide a mode by which one man may be compelled to allow to another a private road over his land, if the same be necessary; and it would seem to be a mere corollary of this, that they may provide for the vacation of such roads, when they shall have become no longer necessary.

And we do not now see any reason for exempting even a purchaser of land, with a right like to this appurtenant to it, from the operation of the rule. All such rights grow up out of a kind of necessity, and ought to be regarded as morally dependent upon the continuance of the necessity. They are burdens imposed upon one for the benefit of another, and ought not to continue when the benefit ceases, and the burden only remains. Where the state or the burdened party provides other equivalent rights, there ought to be a remedy for the extinction of the servitude which is no longer, in any valuable sense, an easement.

The other assignments of error do not seem to us to require any special notice; we cannot sustain them.

The order of vacation affirmed.